1

2

3

4

5 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
6 AT SEATTLE

7 JOSHUA W.,

8                                 Plaintiff,          CASE NO. C18-1533-MAT

9              v.

10 ANDREW M. SAUL,                                    ORDER  RE: SOCIAL SECURITY
Commissioner of Social Security,[1]                   DISABILITY APPEAL
11

12                                 Defendant.

13         Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of

14 the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

15 application for Supplemental Security Income (SSI) after a hearing before an Administrative Law

16 Judge (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all

17 memoranda, this matter is AFFIRMED.

18                         **FACTS AND PROCEDURAL HISTORY**

19         Plaintiff was born on XXXX, 1989.[2]  He completed high school in five years, taking special

20 education classes.  (AR 40-41.)  He has never worked.  (AR 179.)

21         Plaintiff protectively filed for SSI in January 2013, alleging disability beginning September

22 ──────────────────

23         [1] Andrew M. Saul is now Commissioner of the Social Security Administration (SSA).  Pursuant to
Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant.

         [2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

1, 1999. (AR 150.) The applications were denied initially and on reconsideration. ALJ Robert Kingsley held a hearing on June 12, 2014, taking testimony from plaintiff and a vocational expert (VE). (AR 33-62.) On July 25, 2015, the ALJ found plaintiff not disabled. (AR 19-28.)

Plaintiff timely appealed. The Appeals Council denied the request for review on September 9, 2015 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed to this Court. On September 14, 2016, the Court issued an Order Reversing and Remanding Defendant's Decision to Deny Benefits. (AR 394-408.) The Court found error in addressing opinion evidence, plaintiff's testimony, and lay testimony, and resulting error in the remainder of the decision. The Appeals Council vacated the ALJ's decision and remanded for a new decision consistent with the Court's order. (AR 415.) The Appeals Council also directed that plaintiff's claim be consolidated with a duplicate SSI application filed on December 16, 2015.

ALJ Virginia Robinson held a hearing on August 2, 2017, taking testimony from plaintiff and a VE. (AR 340-72.) On June 20, 2019, ALJ Robinson issued a decision finding plaintiff not disabled since January 10, 2013, the date of the SSI application. (AR 315-34.) The ALJ noted an SSI application plaintiff protectively filed on October 21, 2011, but found no basis to reopen. (AR 316.) Plaintiff appealed to this Court. *See* 20 C.F.R. § 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the application date. At step two, it must be

determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's autistic disorder and/or other developmental disorder, obsessive-compulsive disorder, and affective disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but with limitations to performing simple routine tasks, in a routine work environment with few and infrequent changes in the work setting and only simple work-related decisions; superficial interaction with co-workers; and no interaction with the public required as part of his work duties. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the VE's assistance, the ALJ found plaintiff capable of performing other jobs, such as work as a toy stuffer, labeler, and car washer.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff asserts error in the consideration of medical opinions and other evidence, his testimony and lay testimony, the RFC, and at step five. He requests remand for an award of benefits based on the 2011 and 2013 applications and an October 21, 2011 disability onset date or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Symptom Testimony</u>

The rejection of a claimant's subjective symptom testimony[3] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. She contrasted early testing results and problems associated with cognitive and behavioral issues with evidence of significant improvement, including improved IQ scores, indicating low to average academic skills, but with specific deficits in written expression. (AR 323-24.) In a July 2011 evaluation (*see* AR 262-69), plaintiff reported difficulty making friends, that he got along

---

[3] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

with teachers well, his behavior improved in adolescence, and he was pretty good at following directions. He did not endorse current problems with depression, anxiety, inattention or anger, displayed cooperative and polite behavior, normal eye contact, psychomotor activity, and speech, and had flat affect and adequate perseverance.

The ALJ found the evidence since the 2013 application showed adequate concentration, cognition, and social skills to persist with at least unskilled employment. (AR 324.) Plaintiff reported his psychological state improved with productive activity and the minimal mental health care he received since leaving school was inconsistent with his allegations. In a May 2013 evaluation (*see* AR 283-86), he reported impaired intelligence and trouble socializing, that working and keeping busy resolved these issues, and that keeping a schedule and doing work had been helpful in school. His mood was calm and a little nervous and he had cooperative and pleasant behavior, unimpaired psychomotor activity, and robotic, but linear stream of mental activity. He recalled items after a delay, performed "serial 7" subtractions without error, correctly spelled "world" backwards, and followed a three-step command without difficulty.

After leaving school in 2009, plaintiff had no documented or reported attempts at mental health care until May 2014, two months prior to his first ALJ hearing. (AR 324.) Visiting a mental health clinic at that time (*see* AR 290-98), plaintiff reported his interest in his qualification for disability benefits and whether he might improve, and no mental health care in the prior ten years. He displayed cooperative but distractible behavior, normal activity level, blunt affect, and impaired long-term memory. He had no further documented mental health care until July 2015 (*see* AR 589-631). In a June 2015 evaluation (*see* AR 546-59), he stated "'truthfully, I don't know why I can't work'" and described a fear of doing something wrong and not being able to understand certain jobs and tasks. (AR 324.) He denied recent symptoms, depression, or difficulties with

concentration, reflected minimal levels of depression or anxiety on symptom inventories, said his only real diagnosis was autism, and displayed awkward but appropriate behavior, motor tics, blunt affect, linear but rigid thought process, and normal memory. He correctly performed serial 7s and his mental status examination (MSE) indicated a likely lack of cognitive impairment.

The ALJ found generally benign psychological findings during recent treatment established plaintiff's sufficient mental functioning for some form of gainful activity. (*Id*.) Treatment records showed adequate control of various psychological issues with medication. When starting care with a psychiatrist in July 2015 (*see* AR 609-11), he reported autism, wanted medication for sleep and repetitive hand washing, and denied other OCD symptoms or symptoms of depression or anxiety. He had a euthymic mood, appropriate affect, good eye contact, normal psychomotor activity and speech, logical thought process, appropriate thought content, and intact cognition. He started Fluoxetine and, in August and November 2015, reported improvement, with okay sleep, no symptoms of depression or anxiety, and had unremarkable examinations. In March 2016, after an increased dosage, he reported doing okay, with decreased hand washing, requested a mild anxiety medication, and had normal psychological findings. (AR 324-25.) In a May 2016 evaluation (*see* AR 563-71), plaintiff reported okay sleep and OCD behavior decreased fifty percent with medication. (AR 325.) He exhibited anxious affect, abrupt but polite behavior, loud speech, normal thought process, memory, and concentration, and good judgment. While reporting continued OCD in August and November 2016, he demonstrated cooperative behavior, normal speech and psychomotor activity, good eye contact, logical thought process, appropriate thought content, normal judgment, and intact cognition. In January 2017, his new medication was working well, with improved anxiety and hand washing, and his examination was unremarkable. In March 2017, he reported normal sleep and again had a normal MSE, including a euthymic mood.

The ALJ found plaintiff's work with the Division of Vocational Rehabilitation (DVR) to show his capacity to perform at least unskilled work without the need for excessive reminders or corrections, to independently manage unexpected circumstances, and to maintain appropriate behavior in a variety of settings. (AR 325.) In a community-based assessment (CBA) with DVR in late 2011 (*see* AR 270-74), plaintiff completed an assignment that included taking three buses, for a total travel time over two hours. He compensated for an unexpected complication by calling the employment consultant and quickly got back on track. "The only area of concern in this assignment was that the closest bus stop to the claimant was forty-five minutes away from his house." (AR 325.) During the CBA, plaintiff worked at three different volunteer sites for a month, had exposure to many new supervisors and coworkers, always had appropriate social interactions, "'impeccable manners'" and was "'friendly and conversational[.]'" (*Id*.) He did reasonably well remembering at a food bank and while he once encountered problems with initial instructions in learning how to paint, he improved over time. At all sites, he was attentive receiving verbal instructions and performed tasks correctly. He performed all tasks to a competitive standard and performed multi-step procedures well, including assembling materials for a major cable company and completing over one hundred packets in an hour with no mistakes.

The ALJ found plaintiff's own statements to indicate minimal overall functional deficits even without recent beneficial treatment and that "[h]is ongoing unemployment appears to be due to his remote location." (*Id*.) In a February 2012 function report (*see* AR 167-74), plaintiff stated unspecific impairments prevented employment, but essentially asserted no functional limitations. He denied problems interacting with others, could pay attention "'indefinitely'" and follow instructions "'perfectly'" whether written or spoken. (AR 325-26.) He handled stress "'decently'" and could tolerate changes in routine "'very well.'" (AR 326.) He had no interference in his

personal care and had daily activities including house chores, meal preparation, and pet care. He left the house daily, sometimes using public transportation, and read, used a computer "'very well'", and regularly visited a library and aquatic center. (*Id*.) He did this without using medication. In May 2013 (*see* AR 283-86), plaintiff reported he preferred being around people, occasionally visited a library and attended church, had decent concentration and fairly good persistence, and had been trying to find a job for the past five years, "adding 'honestly, I am not really sure why I can't find a job[.]'" (*Id*.)

In the June 2014 hearing, plaintiff said he spent his days doing household chores, watching television, and writing short stories on his computer. He did a pretty good job volunteering at the food bank and denied any problems because the job was "'simple.'" (*Id*.) In August 2016, he reported doing housework and the occasional farm job. In November 2016, his typical day included chores and going to the library. During the August 2017 hearing, plaintiff described his food bank work as "'pretty decent'" and, contrary to the DVR records, said "it had been 'discontinued' after a few days because he had needed frequent corrections in his performance." (*Id*.) He testified his daily activities since then included housecleaning, yardwork, and a lot of reading. Plaintiff "lived in 'farmland'" with the nearest bus stop forty-five minutes away. (*Id*.)

Plaintiff suggests the ALJ improperly rejected his testimony based solely on an absence of objective evidentiary support and depicts the ALJ's reasoning as unconvincing, conclusory, and/or mischaracterizations of the record. He deems the ALJ's reliance on an absence of treatment improper given that he suffers from mental impairments and contends his reporting merely shows his limited insight. He denies his activities show he could perform full-time competitive work and argues the ALJ's later stated conclusion his "various psychological impairments are either dormant or well-controlled with medication, without much [discernible] effect on his functioning[]" (AR

328) shows she does not understand autism.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); Social Security Ruling (SSR) 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 416.1529(c)(4). An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers inconsistencies in reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), inconsistency with activities, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), and evidence associated with treatment, § 416.929(c)(3), SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), and evidence of improvement, *Morgan v. Comm'r of SSA*, 169 F.3d 595, 599-600 (9th Cir. 1999).

The ALJ did not reject plaintiff's testimony based solely on an absence of objective support. She properly considered, along with several other factors, both absent corroborating and contradictory medical evidence. She also accounted for significant impairment in the RFC.

The ALJ offered detailed explanations and examples, not mere conclusory assertions, and her interpretations of the evidence are at least equally rational to those offered by plaintiff. *Morgan,* 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). For example, while the record contains support for limitations in insight, it also contains evidence of demonstrated abilities and

activities exceeding those alleged and consistent with plaintiff's reporting.

The ALJ properly considered plaintiff's failure to seek and otherwise minimal mental health treatment. The mere fact he suffers from mental health impairments does not preclude that consideration. *See, e.g., Molina*, 674 F.3d at 1113-14 (finding no medical evidence a resistance to treatment was attributable to mental impairments, rather than personal preference and that it was "reasonable for the ALJ to conclude that the 'level or frequency of treatment [was] inconsistent with the level of complaints.'") (quoted source omitted). Likewise, the ALJ properly considered evidence of improvement with regular treatment. Rather than reflecting a misunderstanding as to the nature of autism, the decision reflects the ALJ's consideration of improvement of plaintiff's OCD and affective disorders. (*See, e.g.*, AR 324-25, 327-28 (discussing evidence of improvement with sleep and OCD symptoms, and denials of symptoms of depression or anxiety).)

Plaintiff, in sum, does not demonstrate error. The ALJ provided specific, clear, and convincing reasons for not accepting plaintiff's testimony as to the degree of his impairment.

<u>Medical Opinions and Other Evidence</u>

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoted source

omitted). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted source omitted). Opinions offered by other sources, such as therapists, may be assigned less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discounted with the provision of germane reasons, *Molina*, 674 F.3d at 1111 (cited sources omitted). *See also* 20 C.F.R. §§ 416.902, 415.913, 416.927. Likewise, the statements of lay witnesses may be discounted with reasons germane to the witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

A.   Brent Oneal, Ph.D.

Dr. Brent Oneal examined plaintiff in July 2011. (AR 262-69.) He diagnosed pervasive developmental disorder not otherwise specified (NOS) and disorder of written expression. He assessed a global assessment of functioning (GAF) score of 65, which describes "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning[], but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV-TR).[4]

Dr. Oneal found plaintiff's intelligence in the low average-to-average range, except for markedly slow processing speed. (AR 266.) Plaintiff appeared to have made substantial progress overcoming past behavioral problems and social deficits, but continued to demonstrate limited capabilities in social interactions. (AR 266-67.) Dr. Oneal recommended plaintiff work with DVR, participate in on-the-job training, and identify a support person at work to correspond with DVR. (AR 267.) He "may have difficulty with fast-paced multi task work environments, given

---

[4] The most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the SSA continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

his especially low speed of processing and limited interpersonal problem solving-skills." (AR 267.) He should increase his structured time and may benefit from help with developing a daily schedule. (*Id*.) Because of his history of low motivation and follow-through and his sedentary lifestyle, plaintiff "may find waking up early and regularly" for work challenging and should begin to structure his life consistent with gainful employment. (*Id*.) He should be encouraged to participate in activities fostering interaction with others and, given his problems with written expression, consider post-secondary education.

The ALJ gave some weight to Dr. Oneal's statement. (AR 329.) Plaintiff's psychological impairments likely limited him to simple, routine tasks, but his activities, examination findings, treatment records, and statements since 2011 showed he can adequately persist with unskilled work according to competitive standards, while maintaining appropriate behavior with a routine level of social interaction. (AR 329-30.) The ALJ construed Dr. Oneal's statement as consisting of a set of recommendations and equivocal suggestions of difficulties, not an assessment of maximum RFC. She disputed as untrue plaintiff's depiction of this evaluation as "'virtually kill[ing] [his] chances with DVR' after which he was considered a 'lost cause.'" (AR 330, 361-63.) Dr. Oneal expressly recommended plaintiff work with DVR, after which plaintiff underwent a successful CBA. The CBA documented adequate and competitive performance in a variety of work tasks, without significant issues in social interactions and functioning. (*See* AR 270-73.) Plaintiff's performance in the CBA and reported activities, including his writing hobby (*see* AR 439-40, 547), demonstrated his deficit in written expression minimally effects his ability to perform unskilled work. The CBA, other activities, longitudinal examination findings, and treatment record also show his limited degree of social connectedness is not reflective of significant limitations in social functioning. Plaintiff, for example, regularly visits libraries and other locations, prefers to be

around people, and denies problems interacting with others. (*See* AR 167-74, 283-86, 597.) Since 2011, he "consistently displayed appropriate/cooperative behavior, albeit with some awkwardness, including during Dr. Oneal's evaluation." (AR 330 (citing AR 262-69, 283-86, 290-308, 546-59, 563-71, 590-91, 594-95, 598-99, 602-03, 605-08, 610)).) Here, and throughout the decision, the ALJ indicated he gave greater weight to professional assessments formulated as opinions of occupational functioning and consistent with the overall evidence since 2011, including the below-described opinions from Dr. Matthew Comrie (AR 77), Dr. Dan Donahue (AR 424-26) and Dr. W. Michael Rogers (AR 283-86).

Plaintiff asserts the ALJ's failure to state any reason for rejecting Dr. Oneal's findings and opinions that his ability to process simple or routine visual material without error fell in the extremely low range, that his "weakness in simple visual scanning and tracking may leave him less time and mental energy for the complex task of understanding new material[,]" and that, despite progress, he still exhibits deficits in interacting with others in a reasonable manner. (AR 265-66.) He maintains Dr. Oneal offered opinions on limitations, not mere recommendations and suggestions, that the ALJ incorrectly found he can adequately persist to competitive standards, and that his limited success in the CBA does not contradict Dr. Oneal's findings and opinions.

The ALJ appropriately focused on the portion of Dr. Oneal's report containing his conclusions and recommendations (AR 266-67) and was not required to address every observation in the earlier description of testing results. *See Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ did not err in assessing the formal conclusions in a doctor's report, rather than treatment recommendations contained in a preceding section). The ALJ also accurately depicted the report as containing recommendations and equivocal suggestions of difficulties. (*See* AR 267 ("It is recommended that . . . "; identifying things that "may" be helpful, with which he "may"

have difficulty or require additional support, and that he should be "encouraged" to do).)  An ALJ may reasonably decline to adopt the opinion of a doctor "offered as a recommendation, not an imperative."  *Carmickle*, 533 F.3d at 1165.  *Accord Rounds*, 807 F.3d at 1006.

The ALJ provided specific and legitimate reasons for rejecting any further limitations in functioning by finding inconsistency with evidence from the CBA and other evidence of plaintiff's activities, examination findings, treatment records, plaintiff's statements, and contrary medical opinions.  *See, e.g.*, *Tommasetti*, 533 F.3d at 1041 (ALJ properly considers inconsistency with the record); *Rollins*, 261 F.3d at 856 (affirming rejection of treating physician's opinion inconsistent with claimant's level of activity; noting claimant never claimed to have problems with many of the conditions and activities the physician instructed her to avoid).  Plaintiff's alternative interpretations of the evidence do not establish reversible error.

B.   Bradon Jones

Employment consultant Bradon Jones completed the November 2011 CBA.  (AR 270-74.) Jones noted plaintiff was able to navigate the bus system effectively, but struggled with reliability and recommended a position with a fixed schedule because difficulty remembering a varying job schedule "may pose a challenge[.]"  (AR 270-71.)  At the three different volunteer sites, plaintiff interacted appropriately with many new supervisors and coworkers and was a capable verbal communicator.  He did well following initial instructions and improved over time when he struggled with an unfamiliar task on one occasion.  He was attentive to verbal instructions and demonstrated comprehension by performing tasks correctly, appeared to have difficulty watching another person do something, and did best when talked through a task.  (AR 271-72.)  His "greatest barrier to productivity seems to be short-term memory problems", but after practice and ample reminders he performed better with new tasks.  (AR 272.)  He performed multi-step procedures

well, but it was recommended he work in a job with very specific lists of duties because he had difficulty making independent decisions regarding work. (AR 273.) With respect to both quality and quantity of work, he performed all tasks to a competitive standard. (AR 272-73.) He would "likely need a moderate amount of coaching for the first 90 days of a new job." (AR 273.) With adequate time and repetition, he "should be able to remember instructions independently[,]" but should be "closely supervised and given frequent verbal reminders" during the coaching period. (AR 273-74.)

In the summary and recommendations portion of the report, Jones opined plaintiff would be "most successful" with a part-time job, as close to his town as possible due to extremely long travel times given a lack of proximity to public transportation; a job with a specific list of duties that is never deviated from; the opportunity to interact socially with a group of co-workers; and ninety days of "highly-engaging job coaching" until he could remember tasks independently. (AR 274.) Jones described plaintiff as an efficient and thorough worker, highly motivated to work, an excellent verbal communicator, and very polite and respectful to coworkers and supervisors. He recommended plaintiff be moved directly into job development, to a job approximately twenty-five hours a week, possibly more in the future.

The ALJ gave some weight to the statement from Jones. (AR 328.) She found plaintiff's activities, examination findings, treatment records, and statements consistent with his ability to perform some kind of work activity since at least 2011 and the evidence from Jones to show his ability to adequately persist with simple, routine tasks without the need for a part-time schedule or excessive degrees of coaching. The ALJ found Jones's statement posed as a recommendation, rather than an assessment of maximum RFC. Further:

> His equivocal recommendation of moderate coach for ninety days
> might have benefited the claimant's performance of more complex

tasks, but the claimant's recent CBA showed that he could adequately perform a variety of tasks with minimal need for coach or added learning time. At all three of the job sites where he performed trial work in late 2011, the claimant['s] work "met the standard for competitive employment." At one site, where he assembled materials for a major cable company, the claimant completed over a hundred packets in an hour with no mistakes. This was after only one shift, where "after explaining to [the claimant] the quantity and order the items went into the bag, he was able to perform the task flawlessly." "A similar level of quality was observed at the food bank," wrote Mr. Jones, "as well as at the Way Back Inn." At the Way Back Inn, the claimant was "a diligent worker [and] was able to complete his work ahead of schedule on each day." This included mowing grass, trimming hedges, moving furniture and debris from a garage, and painting a conference room. He "performed all of these tasks quickly and efficiently." He only slowed down while painting, due to the unfamiliarity of this task. He nonetheless completed it ahead of schedule. The rest of the claimant's CBA found good social interactions and the ability to adequately perform multi-step procedures. Although he had missed one work shift due to confusion about his schedule, he had also successfully compensated on another occasion where he had been given incorrect travel information ([AR 272-74]). Mr. Jones's concerns about the claimant's memory are otherwise belied by the claimant's demonstrations of adequate memory and intact cognition ([AR 283-86, 563-71, 591, 595, 599, 603, 611]), while his recommendation of a part-time work schedule is contrary to the claimant's reported lack of issues with concentration or persistence ([AR 167-74, 283-86, 546-59]).

(AR 328-29.)

Plaintiff argues the report from Jones shows only that he may be able to perform part-time work with special accommodations, including highly engaging job coaching and modified job duties. In so doing, plaintiff offers a rational interpretation of this lay evidence. However, the ALJ similarly offered a rational interpretation. She also provided several germane reasons in support, including Jones's identification of recommendations, rather than assessments of maximum RFC; the equivocal nature of some recommendations; evidence from within the report, from the treatment record, and from plaintiff's own reporting; and contrary medical opinions.

C.    W. Michael Rogers, Psy.D.

Dr. W. Michael Rogers evaluated plaintiff on May 19, 2013. (AR 283-86.) He diagnosed pervasive developmental disorder, NOS, and assessed a GAF of 50, describing "serious symptoms" or "any serious impairment in social, occupational, or school functioning[.]" DSM-IV-TR 34. Dr. Rogers found plaintiff's mental health prognosis fair and treatment not likely to significantly improve his overall level of functioning, but his current level of functioning "adequate for some type of employment as noted below." (AR 285.) In the subsequent functional assessment, Dr. Rogers found plaintiff has the capacity to reason and understand; memory, concentration, and persistence within normal limits; reported he enjoyed being around others; has not been employed, but is interested and willing to be employed; would benefit from vocational training; and appears to have good adaptation skills. (AR 286.)

The ALJ gave some weight to Dr. Rogers's opinion, finding activities, examination findings, treatment records, and statements consistent with plaintiff's ability to perform gainful work activity, despite some limitation in social functioning. (AR 332.) However, she found the overall evidence consistent[5] with additional limitations to unskilled work, with few and infrequent changes in work setting due to some impairment in memory, concentration, and adaption.

Plaintiff notes the ALJ did not acknowledge the GAF rating assessed by Dr. Rogers and failed to state any reason for rejecting the opinion he would benefit from vocational training. Neither of these omissions warrant reversal. The failure to specifically address a GAF score does not constitute legal error. *Hughes v. Colvin*, No. 13-35909, 2015 U.S. App. LEXIS 6131 at *2 (9th Cir. Apr. 15, 2015) (finding no error "because a GAF score is merely a rough estimate of an

---

[5] The ALJ's decision contains a typographical error in stating the overall evidence is "inconsistent" with the additional limitations included in the RFC. (*See* AR 322 and 332.)

individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations."); *Pinegar v. Comm'r of SSA*, No. 11-15955, 2012 U.S. App. LEXIS 24180 at *3 (9th Cir. Nov. 23, 2012) ("[T]his Court has not found error when an ALJ does not consider [GAF] scores."); *McFarland v. Astrue*, No. 06-35549, 2008 U.S. App. LEXIS 16011 at *3 (9th Cir. Jul. 25, 2008) (no error in failure to address three GAF scores specifically). Nor did the ALJ err in relation to the vocational training recommendation. She could "rationally rely on specific imperatives regarding [plaintiff's] limitations, rather than recommendations[,]" and is ultimately "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. The ALJ here reasonably found plaintiff even more limited than opined by Dr. Rogers.

D. <u>Benjamin B. Skoropinski, LMHCA, CDPT</u>

Plaintiff's counselor, Benjamin Skoropinski, completed two questionnaires dated June 11, 2014. (AR 298-308.) In the first form, Skoropinski assessed moderate/marked limitations in performing activities in a schedule, maintaining regular attendance, and being punctual, and marked limitations in accepting instructions and responding appropriately to criticism, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. (AR 299-300.) Plaintiff's symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple tasks and plaintiff was incapable of even low stress jobs. (AR 300.) While plaintiff had the capacity to perform low stress tasks, he did not have the capacity to be reliable or punctual. His low frustration tolerance may also interfere with functioning and he seemed to have "very limited ability to be self-directed and to maintain attention." (*Id.*)

In the second form, Skoropinski assessed a GAF of 50. (AR 302.) Based on his

assessment, observations, reports from plaintiff and family members, and MSE, Skoropinski opined plaintiff's mental and emotional impairments prevented him from maintaining or even acquiring a job. (AR 302-03.) While he should be able to improve, his prospects for maintaining a job were low due to the probability the etiology of his condition is largely organic. Skoropinski checked boxes for blunt, flat, or inappropriate affect, seclusiveness or autistic thinking, emotional withdrawal or isolation, intense and unstable interpersonal relationships and impulsive or damaging behavior, memory impairment, and oddities of thought, perception, speech, or behavior. (AR 304.) He found plaintiff unable to meet competitive standards (or markedly impaired (*see* AR 298 and 305)) in attendance and being punctual, performing at a consistent pace, responding appropriately to changes, and dealing with normal work stress. (AR 305.) Plaintiff was unable to make appointments on time (two hours late for one) and made scheduling errors, was observably frustrated at interruptions to routines, and has anger management issues and low frustration tolerance, as reported by and observed in interactions with family. (AR 303, 305.) Skoropinski found plaintiff unable to meet competitive standards with respect to setting realistic goals or making plans independently of others or dealing with the stress of semiskilled or skilled work, noting he did not remember his own address, where he has lived for years, needed to ask his father for his social security number, has an observably low frustration tolerance, and is highly dependent on others ("It became very apparent that client was unable to consistently make appointments w/out the guidance and pressure of his father."). (AR 303, 306.) Skoropinski explained serious, but not precluded limitations (or moderate impairment (*see* AR 298 and 306)) in maintaining socially appropriate behavior and traveling in unfamiliar places by noting "inappropriate behaviors "(e.g. hanging up on assessor's incoming phone call) w/out realizing he was violating boundaries[,]" "organizing assessor's office[,]" refusal to go to an office in Renton because he did

not know where it was, and arrival two hours late because he mis-navigated the bus system. (AR 306.) Plaintiff also had one or more years of inability to function outside a highly supported living arrangement, with an indication of continued need, and would be absent four or more days per month. (AR 307-08.)

The ALJ noted that the prior ALJ decision gave little weight to Skoropinski's assessment and that neither this Court, nor the Appeals Council found error in that conclusion. (AR 330.) She likewise gave the assessment little weight, finding it internally inconsistent in numerous respects. (*See, e.g.*, AR 300, 306 (no limitations and serious limitations in the ability to maintain appropriate behavior), AR 299, 305 (both mild and moderate limitations in relation to simple instructions), AR 299, 305 (marked and moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors), AR 300, 306 (marked and moderate/mild limitations in traveling in unfamiliar places and using public transportation), AR 300, 306 (moderate and marked limitations in the ability to respond appropriately and make changes in the work setting).) The ALJ found the wide range of inconsistent opinions "in notable contrast to [the] complete lack of objective evidence in [the] check-box assessment." (AR 330 (citing AR 298-301).) She found it incompatible with plaintiff's activities, examination findings, treatment records, and statements.

Plaintiff concedes inconsistencies, but denies they justify rejection of other consistent opinions. He avers error in the failure to acknowledge consistency between Skoropinski's opinions and clinical findings described in his treatment notes. He states the opinions are almost entirely consistent with his activities, examination findings, treatment records, and statements. Plaintiff clarifies that this Court did not address the ALJ's evaluation of the evidence from Skoropinski (*see* AR 394-407) and that the Appeals Council vacated and did not affirm any part of the prior ALJ decision (AR 415).

The identification of multiple inconsistencies is a reason germane to Skoropinski and a reasonable basis for discounting the weight of this evidence. *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports). The ALJ rationally construed Skoropinski's opinions as inconsistent with plaintiff's activities, examination findings, treatment records, and statements. *See, e.g.*, *Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at 856. It is also true that, while not specifically addressed by this Court or the Appeals Council, plaintiff previously assigned error to this assessment and the Court found error only in relation to three other opinions. (AR 395.) Plaintiff does not here demonstrate error.

E.     Tasmyn Bowes, Psy.D.

Dr. Tasmyn Bowes evaluated plaintiff on June 9, 2015 on behalf of the Department of Social and Health Services (DSHS). (AR 546-59.) She diagnosed autism spectrum disorder, level one, and other specified tic disorder, with onset after age eighteen. (AR 548.) Dr. Bowes found plaintiff severely impaired in communicating, performing effectively, and maintaining appropriate behavior; markedly impaired in relation to detailed instructions, adapting to changes, simple work-related decisions, completing a normal work day and week, setting realistic goals and planning independently; and overall markedly impaired. (AR 549.) Plaintiff "needs to be referred to SSDI – not likely to make significant progress with [counseling] or psychotropics – deficits in functioning likely to be long term." (AR 550.)

The ALJ described other limitations assessed by Dr. Bowes, including no or mild restrictions in the ability to maintain regular attendance and persist with simple instructions. (AR 331, 549.) She gave Dr. Bowes's assessment, and the concurring opinion of consulting psychologist Dr. Luci Carstens offered later that same month (AR 560-61), minimal weight, except to agree the evidence is consistent with the ability to maintain regular attendance and persist with

simple instructions.  The ALJ stated:

> During Dr. Bowes's evaluation, the claimant described a fear of "doing something wrong" and being unable to understand "certain jobs and tasks."  He denied difficulties with concentration.  He said his "only real [diagnosis] was autism."  He displayed awkward but appropriate behavior, blunt affect, organized speech, rigid but linear thought process, and normal memory.  He correctly performed "serial 7" subtractions, and his [MSE] indicated a likely lack of cognitive impairment.  He reported that his regular activities included visiting a library and writing short stories.  This evidence and these statements fail to establish the wide range of moderate to severe limitations opined by Dr. Bowes, which are otherwise inconsistent with the claimant's activities, examination findings, treatment records, and statements.

(AR 331 (internal citation to record omitted).)  Plaintiff's CBA performance belied his fear of being unable to adequately perform work tasks.  Since then, plaintiff demonstrated intact memory, cognition, concentration, cooperative/appropriate behavior, and good/normal/ intact judgment (*id*. (citing AR 283-86, 563-71, 590-91, 594-95, 598-99, 602-03, 605-08, 610)), and denies issues with concentration, persistence, or social functioning (*id*. (citing AR 167-74, 283-86)).  Records showed improvement with medication started a month after he saw Dr. Bowes.  (*See* AR 589-631.)

Plaintiff asserts that, contrary to the ALJ's inference, Dr. Bowes did not base her opinions primarily on his statements.  However, the ALJ did not find Dr. Bowes relied in substantial part on plaintiff's reporting.  The ALJ rationally found inconsistency with objective findings as described by the ALJ, as well as inconsistency with plaintiff's activities and statements and other medical records and examination findings.  *See, e.g.*, *Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at 856; *Morgan*, 169 F.3d at 603.  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and physician's own notes or observations is "a permissible determination within the ALJ's province.") The ALJ also reasonably pointed to evidence of improvement.  (*See* AR 589-611.)

F. <u>William R. Wilkinson, Ed.D.</u>

Dr. William Wilkinson evaluated plaintiff for DSHS on May 12, 2016. (AR 563-71.) He diagnosed autism spectrum disorder and OCD and assessed a GAF of 50. (AR 565.) He found marked impairment with detailed instructions, performing activities in a schedule/maintaining attendance/being punctual, completing a normal work day/week, and maintaining appropriate behavior, and both moderate and marked impairment in adapting to changes, communicating and performing effectively, setting realistic goals, and planning independently. (AR 566.)

The ALJ noted DSHS consultant Dr. Brian VanFossen, later the same month, concurred with Dr. Wilkinson. (AR 572-73.) She gave the opinions of these doctors minimal weight except to agree the evidence was consistent with plaintiff's ability to ask simple questions, make simple decisions, learn new tasks, and persist with simple instructions. (AR 331, 566.) She noted that Dr. Wilkinson found anxious affect, abrupt but polite behavior, loud speech, normal thought process, memory, and concentration, and good judgment. (AR 332, 567-68.) The ALJ concluded the objective evidence failed to establish the wide range of moderate to marked limitations opined and noted treatment since July 2015 consistently found unremarkable behavior and normal speech, with generally appropriate/unremarkable affect. (AR 332 (citing AR 590-91, 594-95, 598-99, 602-03, 605-08, 610).) She pointed to the CBA as showing plaintiff's ability to persist with a variety of unskilled tasks at a competitive level while maintaining appropriate behavior (*id*. (citing AR 270-74)), that plaintiff had otherwise reported a routine of chores, writing, reading, and visiting libraries (*id*. (citing AR 439-40, 167-74, 283-86, 546-58, 563-71, 350-59)), and his reported lack of issues with concentration, persistence, or social functioning (*id*. (citing AR 167-74, 283-86)). "This has been despite a lack of any regular mental health care prior to July 2015." (AR 332.)

Plaintiff asserts the ALJ has no medical basis for concluding Dr. Wilkinson's objective

findings failed to establish the degree of limitation opined. However, as stated above, the ALJ bears the responsibility for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler*, 775 F.3d at 1098; *Carmickle*, 533 F.3d at 1164. Plaintiff asserts Dr. Wilkinson based his opinion on his own clinical findings. Yet, on MSE, Dr. Wilkinson found normal thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and judgment. (AR 567-68.) Also, while plaintiff was loud without awareness, had a flat type gaze with some elements of bewilderness, and an "affect more anxious covered up by activity than calm[,]" plaintiff had "abrupt behavior, but in positive manner," polite and cooperative behavior, appeared to try and do his best, with appropriate dress and self-care, and was alert, calm, and a little anxious. (AR 567.) The ALJ reasonably found inconsistency between some of the degrees of impairment opined and the objective evidence, including Dr. Wilkinson's own findings. She also reasonably relied on evidence from the CBA and plaintiff's own reporting in assigning some of Dr. Wilkinson's opinions minimal weight.

G.    Dan Donahue, Ph.D., and Matthew Comrie, Psy.D.

In May 2013, non-examining State agency psychological consultant Dr. Matthew Comrie found no limitations in understanding, memory, concentration, persistence, and adaptation. (AR 77.) Assessing a moderate limitation, he opined plaintiff would perform best with limited contact with the general public. (*Id.*) Like Dr. Rogers, the ALJ gave this opinion some weight. (AR 332.) That is, plaintiff's activities, examination findings, treatment records, and statements are consistent with the ability to work despite some deficit in social functioning, but the overall evidence supported a limitation to unskilled work, with few and infrequent changes in the work setting, due to some impairment in memory, concentration, and adaptation.

Earlier, in May 2012, non-examining State agency psychological consultant Dr. Dan

Donahue opined plaintiff could remember locations and work procedures once taught and repeated, would not be able to consistently understand and remember detailed instructions, but could understand and carry out simple instructions, as supported by objective testing and functional activities. (AR 424.) Plaintiff should be able to make simple decisions relating to simple, routine tasks, would likely have some occasional interference with concentration, persistence, or pace, but no significant problems sustaining a job where he consistently engages in a repetitive task appropriately taught to him, and would be unable to make complex decisions independently. (AR 425.) Plaintiff could have brief and superficial interactions with others in an environment where simple, routine tasks are performed independently, would need work goals and expectations set and explained to him, and would be able to adapt to simple changes. (*Id.*)

The ALJ gave significant weight to Dr. Donahue's assessment, finding it most consistent with plaintiff's activities, examination findings, treatments records, and statements. (AR 332.) While his psychological impairments might cause lapses in concentration and persistence with some tasks, the evidence shows plaintiff can adequately persist with simple, routine tasks with a short period of verbal instruction. The ALJ incorporated Dr. Donahue's opinion with those of Drs. Rogers and Comrie and found plaintiff could work with the assessed RFC.

Plaintiff argues the opinions of these non-examining doctors are entitled to little weight because they did not review more recent evidence from Skoropinski, Dr. Bowes, or Dr. Wilkinson. However, the ALJ provided specific and legitimate reasons for rejecting later opinion evidence, including, but not limited to evidence of improvement with treatment. Given other evidence in the record, the ALJ could appropriately assign weight to the contradictory opinions of the non-examining doctors. *See, e.g.*, *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with

independent clinical findings or other evidence in the record."); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.") The mere fact Drs. Comrie and Donahue provided their opinions earlier does not suffice to undermine the substantial evidence support for the ALJ's conclusions. *See generally Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (noting the inevitable lapse between a State agency doctor's review and the ALJ's decision and the absence of any limitation on the amount of time between that review and an ALJ's reliance on it, except for cases where an ALJ concludes additional medical evidence may change the State doctor's finding regarding a listing).

<u>Lay Witness Statement</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen*, 80 F.3d at 1288-89.

Plaintiff asserts the ALJ failed to acknowledge that an Individualized Education Program (IEP) dated January 22, 2009 supports his testimony. (*See* AR 229 (describing plaintiff as very defensive, inappropriately reacting to others, very polite but lacking other social skills such as personal space, and with cognitive delays in processing and comprehending social cues, academics, and interpreting others).) However, the ALJ described both this and an earlier IEP and rationally construed the evidence to show significant improvement since childhood. (AR 323-24.)

Plaintiff also takes issue with the ALJ's assignment of limited weight to the statements provided by his father in February 2013 (AR 187-94) and July 2017 (AR 542-44). The ALJ described both statements, including observations that plaintiff was easily frustrated, had difficulty

concentrating and impaired memory, and required daily reminders; that he would need a lot of help to get and maintain a job; loses his temper easily and thinks everyone is against him; went through periods of staying up all night and sleeping all day and missed most appointments as a result; talked to himself and had severe episodes of facial tics, hitting himself, and making strange noises; repeatedly washed his hands without cause and became angry if interrupted; and lacked basic social skills and was always depressed. (AR 326.)

The ALJ reasoned that previously discussed activities, examination findings, treatment records, and plaintiff's own statements indicated only minimal interference in concentration, memory, social functioning, and frustration tolerance, even with minimal treatment and despite an allegedly long history of mental disability. (AR 326.) She reiterated findings in the CBA, plaintiff's statements in his function report, his reporting to and examination findings from Dr. Rogers and Dr. Bowes, and the evidence from his recent treatment, including evidence of improvement and showing his various psychological impairments are either dormant or well-controlled with medication. (AR 326-28.) Based on the overall evidence, the ALJ gave greater weight to professional statements consistent with the evidence she described.

Plaintiff counters that the ALJ cites only to things he did well during the CBA, while ignoring problems consistent with the testimony of his father, errs in relying on his reporting as he is not an accurate judge of the quality of his work, and inaccurately contends any recent treatment records contradict the lay statements. Plaintiff does not demonstrate error because the ALJ provides a different, but rational interpretation of the evidence and several germane reasons for discounting the lay testimony. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and claimant's reports).

///

Other Alleged Errors

Plaintiff maintains error in the RFC assessment and at step five resulting from the alleged errors discussed above.   Finding no such errors, this mere restating of plaintiff's argument fails. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  Plaintiff also contends the ALJ's finding of no basis to reopen the prior application is contrary to law given that it could have been reopened "for any reason" and the new and material evidence submitted as a part of the current claim satisfies this very minimal requirement.  20 C.F.R. § 416.1488(a).  *See also* SSR 91-5p.  Plaintiff does not, however, set forth any basis for reversing the ALJ's decision based, alone, on the decision not to reopen.  The ALJ's decision discusses evidence dated prior to the February 12, 2012 denial of the October 2011 application and plaintiff identifies no specific error in relation to that or any other evidence.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>16th</u> day of September, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 28